UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JEFFREY DUMAS,

          Petitioner,

v.

          Case No. 06-20402
          Honorable Thomas L. Ludington

UNITED STATES OF AMERICA,

          Respondent.

_____ /

**OPINION AND ORDER ADOPTING REPORT, DENYING PETITIONER'S MOTION TO VACATE, DENYING CERTIFICATE OF PPEALABILITY, AND DECLINING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Did Petitioner Jeffrey Dumas have two prior convictions that qualified as "controlled substance offenses" under § 4B1.2(b) of the United States Federal Sentencing Guidelines? That is the principal question in this federal habeas case.

Contending that he does not, Petitioner asserts that when he was sentenced in this Court he had only one prior drug conviction punishable by more than a year's imprisonment. The other relevant conviction (in 1996 in Michigan state court) did not qualify because the Michigan sentencing guidelines were mandatory and his range was 0–9 months.

Petitioner's contention lacks merit. In 1996, the Michigan sentencing guidelines were discretionary, not mandatory. *See, e.g.*, *People v. Hegwood*, 636 N.W.2d 127, 131 (Mich. 2001) (per curiam). "Whenever the judge determines that a minimum sentence outside the recommended minimum range should be imposed," the guidelines expressly provided, "the judge may do so." *Id.* at 132 (2001) (quoting *Michigan Sentencing Guidelines* 7 (2d ed. 1988)).

Petitioner's 1996 conviction carried a statutory maximum penalty of four years imprisonment. It qualified as a "controlled substance offense" under § 4B1.2(b). Petitioner's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 will be denied.

**I**

**A**

Petitioner was convicted on six separate occasions for six separate crimes before the events giving rise to this case. Two of those convictions are pertinent here.

In 1996, Petitioner was convicted in Michigan state court of the delivery/manufacture of less than five kilograms of marijuana. This offense, as noted, was punishable by imprisonment for up to four years. *See* Mich. Comp. Laws § 333.7401(2)(d)(iii). He received two years' probation.

The following year, again in Michigan state court, Petitioner was convicted of delivery of less than 50 grams of cocaine. He was sentenced to five years to life imprisonment.

**B**

Petitioner was paroled in 2002. Four years later, he sold 43 grams of crack cocaine (through an associate) to an undercover police officer. As Petitioner left the scene, he was arrested.

A grand jury in the Eastern District of Michigan returned a two-count indictment against Petitioner charging him with conspiring to distribute and distributing more than five grams but less than 50 grams of cocaine base.

The government also filed a notice of a penalty enhancement pursuant 21 U.S.C. §§ 841 and 851. Under this enhancement, if convicted Petitioner faced a mandatory life sentence.

The morning that trial was scheduled to begin, Petitioner reached an oral plea agreement with the government. In exchange for a guilty plea to one count of conspiring to distribute cocaine base and one count of distributing cocaine base, the government would not seek the statutory penalty enhancement. Petitioner accepted and pleaded guilty to both counts of the indictment.

**C**

To calculate Petitioner's sentencing guideline range, the presentence report used the 2006 edition of the *United States Sentencing Guidelines Manual*. Because Petitioner was accountable for at least 35 but less than 50 grams of cocaine base, Petitioner's base offense level was 30. Petitioner received two acceptance of responsibility points (but not a third since he pleaded guilty on the morning of trial), reducing his offense level to 28. But because of Petitioner's two prior felony drug offenses, he was scored as a career offender under § 4B1.1 of the sentencing guidelines. This adjusted his offense level to 37. His acceptance of responsibility again reduced his score two points, to 35. As a career offender, his criminal history category was VI. This resulted in a guideline range of 292 to 365 months imprisonment.

At the sentencing hearing, Petitioner's counsel acknowledged that the guidelines range had been correctly calculated, observing:

> One of the things we were concerned about was a conviction that the defendant had with respect to possession with intent to distribute marijuana. We did contact the court, we have a certified record, we verified it. I can't argue with the math.
>
> And because we cannot argue with the presentence report, we come before this court to ask the court to recognize that over these years there have been significant changes to the treatment of these drug offenses. . . .
>
> Not that we're making excuses at all, but we had a marijuana case. The law does not allow the court to look into the facts and circumstances of the particular

> charge, all you can look at is the record and say he obviously qualifies. [The guideline calculation] is absolutely correct. . . .
>
> I want the court to consider that not in some lawyer's technicality but when we go to determine what the appropriate sanction should be, some effort has to be made to the nature of the offense and the quantity of time and the exercise of — not to change the numbers but to decide whether you want to impose such a sentence.

Sentencing Tr. 4:5–25, 6:4–16, May 24, 2007, ECF No. 52. The Court sentenced Petitioner to 360 months. In imposing the sentence, the Court explained:

> You're a 36 year old man and notwithstanding what I view to be your potential, you're also here on your seventh and eighth felony convictions that involve drugs, significant drug trafficking, and weapons.
>
> And I do agree that the nature of the sentence you face is significant. I hope, I hope, today that in imposing this sentence that once it's served, you will return both the love and respect so many of your other family members have shown you by their conduct.
>
> The court has given careful attention not only to the sentencing guidelines pursuant to the Sentencing Reform Act, but also the statutory considerations that are included in the Title 18 Section 3553(a).

Sentencing Tr. 9:10–24. Petitioner appealed to the Sixth Circuit, arguing that the Court did not adequately explain the reasons for the sentence. The Sixth Circuit disagreed and affirmed the judgment. *United States v. Dumas*, 361 F. App'x 646, 649 (6th Cir. 2010). Petitioner filed a petition for a writ of certiorari with the Supreme Court; on October 4, 2010, the petition was denied.

**D**

Returning to this Court in October 2011, Petitioner moved to vacate his sentence pursuant to § 2255. ECF No. 69. The motion raises four claims for relief. The first three are ineffective assistance of counsel claims. The fourth asserts this Court abused its discretion in applying the career offender sentencing enhancement because Petitioner is a "low level drug dealer easily

replaced . . . and therefore not the person that the career offender was designed to target." Pet'r's § 2255 Mot. 9 (capitalization omitted). The following month, Petitioner filed a "supplemental brief" elaborating on his claims. ECF No. 73. He also filed a motion for appointment of counsel. ECF No. 86.

In December 2011, the government moved to dismiss Petitioner's second, third, and fourth claims. ECF No. 76. The government asserts that these claims concern sentencing guideline issues that are not cognizable in a § 2255 petition.

The Court referred the matter to Judge Binder for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). ECF No. 71.

In December 2012, Petitioner moved to add two claims to his § 2255 petition. ECF No. 92. He also moved to hold the case in abeyance pending the Supreme Court's decisions in *Miller v. California* and *Moncrieffe v. Holder*. ECF No. 93.

Judge Binder has issued a report recommending that the Court deny the § 2255 petition. ECF No. 87. Both parties filed objections. ECF Nos. 88, 89.

**II**

Before reaching the substance of the objections to the report and recommendation, however, Petitioner's motion to hold the case in abeyance pending *Miller* and *Moncrieffe* must be addressed.

When Petitioner filed his motion, the petition for a writ of certiorari in *Miller* was pending. On January 14, 2013, the Court denied the petition. *Miller v. California*, 133 S. Ct. 929 (2013). Petitioner's reliance on that case is therefore misplaced.

In contrast, the Court granted the writ in *Moncrieffe*, 132 S. Ct. 1857 (2012), and issued a decision on the merits on April 23, 2013. *Moncrieffe v. Holder*, 133 S. Ct. 1678, 2013 WL 1729220 (2013). Accordingly, a discussion of that case, and why it does not help Petitioner's case, is appropriate.

1

At issue in *Moncrieffe* was whether the Immigration and Nationality Act's definition of "aggravated felony," 8 U.S.C. § 1101(a)(43), encompasses "a state criminal statute that extends to the social sharing of a small amount of marijuana." *Id*. at *3. Writing for the Court, Justice Sotomayor held that it does not, explaining: "If a noncitizen's conviction for a marijuana distribution offense fails to establish that the offense involved either remuneration or more than a small amount of marijuana, the conviction is not for an aggravated felony under the INA." *Id*. at *13.

The decision turned on the definition of "aggravated felony" under the INA. That act lists a number of qualifying offenses, among them "illicit trafficking in a controlled substance." § 1101(a)(43)(B). This term, in turn, is defined by reference to another federal act. The Supreme Court explains:

> This general term [i.e., "illicit trafficking in a controlled substance"] is not defined, but the INA states that it "includes a drug trafficking crime (as defined in section 924(c) of title 18)." In turn, 18 U.S.C. § 924(c)(2) defines "drug trafficking crime" to mean "any felony punishable under the Controlled Substances Act," or two other statutes not relevant here. The chain of definitions ends with § 3559(a)(5), which provides that a "felony" is an offense for which the "maximum term of imprisonment authorized" is "more than one year." The upshot is that a noncitizen's conviction of an offense that the Controlled Substances Act (CSA) makes punishable by more than one year's imprisonment will be counted as an "aggravated felony" for immigration purposes. A conviction under either state or federal law may qualify, but a state offense constitutes a "felony punishable under the Controlled Substances Act" only if it proscribes conduct punishable as a felony under that federal law.

*Moncrieffe*, 2013 WL 1729220, at *3 (brackets, quotation marks and citations omitted) (quoting *Lopez v. Gonzales,* 549 U.S. 47, 60 (2006)).

The CSA's proscription against marijuana distribution is contained within two subsections of 21 U.S.C. § 841(b). The first, a felony provision, provides for a maximum sentence of five years "[i]n the case of less than 50 kilograms of marihuana." § 841(b)(1)(D) The second, a misdemeanor provision, provides for a maximum sentence of one year if the offense involves "distributing a small amount of marihuana for no remuneration." § 841(b)(4).

The Court observed that the state drug offense at issue "criminalizes conduct described by both § 841's felony provision and its misdemeanor provision." *Moncrieffe*, 2013 WL 1729220, at *4. That is, the statute does not distinguish between distributing marijuana generally and distributing a small amount of marijuana for no remuneration.

The Court then applied its "categorical approach," concluding that to qualify as an "aggregated felony" under the INA, "a state drug offense must meet two conditions: It must 'necessarily' proscribe conduct that is an offense under the [Controlled Substances Act], and the CSA must 'necessarily' prescribe felony punishment for that conduct." *Id*. at *6.

**2**

This case, however, does not implicate an "aggregated felony" under INA — but a "controlled substance offense" under the United States Sentencing Guidelines.

The term "controlled substance offense" is defined in § 4B1.2(b) of the guidelines. It means "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a

counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b).

Like the INA, whether a particular state crime constitutes a "controlled substance offense" under the guidelines involves a categorical approach. *United States v. Butler*, 207 F.3d 839, 843 (6th Cir. 2000) (quoting *United States v. Arnold*, 58 F.3d 1117, 1121 (6th Cir. 1995)). Under this approach, "generally speaking, only the fact of the prior conviction and the statutory definition of the predicate offense are used to determine whether a prior conviction is a controlled substance offense." *United States v. Robinson*, 333 F. App'x 33, 35 (6th Cir. 2009) (brackets omitted) (quoting *United States v. Galloway*, 439 F.3d 320, 322 (6th Cir. 2006)); *see also United States v. Wright*, 43 F. App'x 848, 851 (6th Cir. 2002).

Unlike the INA, however, a particular state offense need not proscribe conduct punishable as a felony under the CSA to constitute a "controlled substance offense" under the sentencing guidelines. *See* U.S.S.G. § 4B1.2, cmt. n.1; *see generally United States v. Newhouse*, --- F.Supp.2d ----, 2013 WL 346432, at *11–13 (N.D. Iowa Jan. 30, 2013) (providing overview of the career offender guidelines); Amy Baron-Evans et. al., *Deconstructing the Career Offender Guideline*, 2 Charlotte L. Rev. 39, 53–56 (2010) (same).

Thus reference to the CSA — including the provisions of § 841(b) — is not required under the guidelines when the predicate offense is a state conviction. *See, e.g.*, *United States v. Pruitt*, 545 F.3d 416, 423 (6th Cir. 2008) (interpreting North Carolina law for purposes of § 4B1.2 enhancement).

Not only Petitioner's motion to hold the case in abeyance moot, his reliance on *Moncrieffe* is misplaced. Accordingly, the merits of the parties' objections are addressed.

### III

Judge Binder issued his report on March 21, 2012.  The government filed an objection to Judge Binder's report on April 4, 2012.  Petitioner filed an objection on April 13, 2012.

Any party may serve and file written objections "[w]ithin fourteen days after being served with a copy" of the report and recommendations.  28 U.S.C. § 636(b)(1).  The district court will make a "de novo determination of those portions of the report . . . to which objection is made."  *Id.*  The Court is not obligated to review the portions of the report to which no objection was made.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985).

In this case, although Petitioner's objection was not timely received, it will be considered.  First, however, the government's objection is taken up.

### A

The government prefaces its objection by recommending that the Court "adopt the ultimate findings in the report and recommendation."  Gov't's Objection 3, ECF No. 88.  But, the government continues, it objects to the report's confusing the sentencing guidelines' career offender enhancement with the statutory enhancement contained in 21 U.S.C. §§ 841 and 851:

> Petitioner claimed in the § 2255 motion that his conviction for possession of marijuana with intent to distribute was not a felony drug conviction for purposes of 21 U.S.C. §§ 841(b)(1) and 851 because he was sentenced to probation for that offense.  Petitioner did not claim that the conviction at issue was improperly used to determine that he was a career offender under the federal sentencing guidelines.  Therefore, all reference in the report and recommendation to the career offender provisions in the guidelines are irrelevant and potentially misleading.

*Id*. at 1 (internal citation omitted).  The government is correct that the statutory enhancement provisions of §§ 841 and 851 are distinct from the career offender enhancement provision of § 4B1.1 of the guidelines.

And the government is correct that in Petitioner's § 2255 motion he asserts that his state court conviction for the delivery/manufacture of marijuana should "not count under 21 USC § 851 as a predicate offense for enhanced penalties under 21 USC § 841." Pet'r's § 2255 Mot. 5 (capitalization omitted).

But the government errs in asserting "Petitioner did not claim that the conviction at issue was improperly used to determine that he was a career offender under the federal sentencing guidelines." Gov't's Objection 1.

In Petitioner's third ground for relief, he writes that this Court "misapplied the USSG by applying career offender" since Petitioner "does not have the two priro [sic] felony convictions." Pet'r's Mot. 8. Likewise, in Petitioner's fourth ground for relief he writes that the Court abused its discretion when it "misapplied the [guidelines] career offender enhancement." *Id*. at 9.

Thus, the report does not err in addressing the career offender provisions of the sentencing guidelines. The government's objection will be overruled.

**B**

Petitioner's objection to Judge Binder's report and recommendation is contained in 14 enumerated paragraphs. Not all of the paragraphs actually object to the report, however, and a close reading of those that do reveal a single overriding objection — Petitioner repeatedly asserts that his state court conviction for the delivery/manufacture of marijuana does not qualify as a "controlled substances offense" under the guidelines.

This objection is examined first, and then Petitioner's ancillary objections are taken up.

**1**

"The argument," Petitioner writes, "is totally that the maximum sentence for the crime he was convicted of was the maximum of the mandatory guidelines in Michigan State of 9 months." Pet'r's Objection ¶ 9. Petitioner elaborates that "the maximum sentence that [he] could have been sentenced to would have been 9 months — less than the undisputed one year for application of the prior qualifying crime for career offender designation." *Id.* ¶ 10; *see also id.* ¶ 8 (objecting to "the nature of the guideline range as applied to [Petitioner] at the sentencing [because of the use] of the Michigan PWID of marijuana").[1]

Petitioner's objection lacks merit. Briefly, when Petitioner was sentenced for the delivery/manufacture of marijuana in 1996, the Michigan guidelines were not mandatory. They were discretionary. The maximum sentence that could have been imposed was four years, not 9 months. Consequently, Petitioner's objection that this conviction does not qualify as a "controlled substance offense" under the guidelines lacks merit.

**a**

As a threshold matter, the Michigan Supreme Court explains that "[s]entencing guidelines in Michigan have existed through two distinct eras." *People v. Hegwood*, 636 N.W.2d 127, 131 (Mich. 2001) (per curiam). In the first era, from 1983 through 1998, "Michigan's courts employed guidelines crafted by [the Michigan Supreme Court]." *Id.* During this period, sentencing was overwhelmingly discretionary:

> [Michigan's] sentencing guidelines were "mandatory" only in the sense that the sentencing court was obliged to follow the procedure of "scoring" a case on the basis of the circumstances of the offense and the offender, and articulate the basis

---

[1] Attached to his motion, Petitioner also produces a copy of the Michigan state guidelines worksheet completed for his delivery/manufacture of marijuana conviction. Pet'r's § 2255 Mot. Ex. 1. The worksheet shows that Petitioner's guideline range was 0–9 months and the statutory maximum was four years.

> for any departure from the recommended sentence range yielded by this scoring. However, because the recommended ranges found in the judicial guidelines were not the product of legislative action, a sentencing judge was not necessarily obliged to impose a sentence within those ranges.

*Id.*; *see also People v. Babcock*, 666 N.W.2d 231, 235–37 (Mich. 2003) (providing overview of Michigan sentencing guidelines development).

The express policy of the guidelines, for example, provided: "Whenever the judge determines that a minimum sentence outside the recommended minimum range should be imposed, the judge may do so." *Hegwood*, 636 N.W.2d at 132 (2001) (quoting *Michigan Sentencing Guidelines* 7 (2d ed. 1988)).

This changed with the dawn of the second era (the current era). Effective for crimes committed on or after January 1, 1999, the Michigan legislature promulgated statutory guidelines circumscribing a sentencing judge's discretion more narrowly. *See* Mich. Comp. Laws § 777.1 et seq. (establishing sentencing guidelines); *id.* § 769.34(3) (authorizing departures from those guidelines).

Again, the Michigan Supreme Court explains: "Following the enactment of these guidelines, the trial court is required to choose a sentence within the guidelines range, unless there is a 'substantial and compelling' reason for departing from this range." *Babcock*, 666 N.W.2d at 236 (quoting § 769.34(3)).

In pertinent part, the Michigan Compiled Laws now provide: "A court may depart from the appropriate sentence range established under the sentencing guidelines . . . if the court has a substantial and compelling reason for that departure and states on the record the reasons for departure." § 769.34(3). Thus, in the second era (the modern era) a Michigan state court retains

discretion to impose a sentence above or below the state guidelines, but this discretion has been restricted by the Michigan legislature. *Hegwood*, 636 N.W.2d at 132.

**b**

Whether a particular crime constitutes a "controlled substance offense" under the guidelines, as noted, involves a categorical approach. *United States v. Arnold*, 58 F.3d 1117, 1121 (6th Cir. 1995). Under this approach, the court undertakes "an examination of the fact of conviction and the statutory definition of the predicate offense." *United States v. Wright*, 43 F. App'x 848, 851 (6th Cir. 2002) (citing *Arnold*, 58 F.3d at 1121).[2]

When the conviction was rendered under state law, the state's statutory definition of the predicate offense must be examined. This definition must of course be read in context. So it can depend on the overall statutory scheme — including mandatory sentencing guidelines. *E.g.*, *United States v. Pruitt*, 545 F.3d 416, 423 (6th Cir. 2008).

In *Pruitt*, for example, the Sixth Circuit considered North Carolina's structured sentencing scheme, under which "the statutory maximum sentence for any given felony offense is derived based on two factors: (1) the defendant's 'prior record level' as calculated under state law; and (2) whether the aggravated, presumptive, or mitigated sentencing range applies." *Id*. at 419 (citing N.C. Gen. St. § 15A-1340.17). Within this scheme, a hypothetical defendant with a criminal history score of one, even with an "aggravated" sentencing range, could be sentenced to no more than 10 months for "selling, manufacturing, delivering, or possessing with intent to sell,

---

[2] "Where the categorical approach fails to be determinative," however, "a sentencing court may look to the charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *United States v. Robinson*, 333 F. App'x 33, 35 (6th Cir. 2009) (quotation marks omitted) (quoting *United States v. Montanez*, 442 F.3d 485, 489 (6th Cir. 2006)).

manufacture, or deliver, a controlled substance." *Id.* at 419 (citing N.C. Gen. St. §§ 90-95(a)(1), 15A-1340.17). Effectively, that would be the statutory maximum.

Michigan's guideline scheme, in contrast, has never been mandatory. Moreover, Petitioner was sentenced during the first era. During this period a sentencing judge had the discretion to impose a sentence up to statutory maximum for a given offense. *People v. Milbourn*, 435 Mich. 630, 636, 461 N.W.2d 1, 2–3 (1990). And, as noted, this discretion was only loosely circumscribed. *Hegwood*, 636 N.W.2d at 132 (2001).

It is undisputed that the statutory maximum for Petitioner's offense was "imprisonment for not more than 4 years." Mich. Comp. Laws § 333.7401(2)(d)(iii). Petitioner's conviction constitutes a "controlled substance offense" under § 4B1.1 of the United States Sentencing Guidelines.

Consequently, Petitioner's argument that he does not qualify as a career offender for guidelines purposes (reiterated as his first, second, and third grounds for relief in his § 2255 motion) lacks merit. Petitioner's objection will be overruled, as will his related objection that his trial and appellate counsel were ineffective for not making this argument.

**2**

Petitioner next objection regards his fourth ground for relief in his § 2255 motion. That claim, as noted, is that the Court abused its discretion in applying the career offender sentencing enhancement because Petitioner is a "low level drug dealer easily replaced . . . and therefore not the person that the career offender was designed to target." Pet'r's § 2255 Mot. 9.

Judge Binder reported that the Sixth Circuit rejects assertions that the "career offender guideline results in a punishment greater than necessary to punish a street-level offender."

Report and Recommendation 11 (quoting *United States v. Vaughn*, 444 F. App'x 875, 882 (6th Cir. 2011), *cert. denied,* 132 S. Ct. 1955 (2012)).

Petitioner objects that his "argument of 'low-level' drug dealer warranting a deviation from teh [sic] USSG range based on a policy dispute by the sentencing court is not foreclased [sic]." Pet'r's Objection ¶ 11.

Petitioner's objection lacks merit. As the Sixth Circuit observed when confronted with a similar argument from another criminal defendant, "[the] rationale is bereft of legal support, and the district court committed no substantive error in rejecting it." *United States v. Alexander*, 543 F.3d 819, 826 (6th Cir. 2008); *see also Vaughn*, 444 F. App'x at 882 ("Our circuit does not countenance such arguments.").

Petitioner's objection will be overruled.

### 3

Finally, Petitioner makes a general objection, writing: "These Objections are directed at Magistrate Binder's R&R, but Duams [sic] wishes to reassert his claims as Grounds 1, 2, 3, and 4 of the Motion. And references same as if set forth fully hereing [sic]. . . . Dumas completely objects to the R&R." Pet'r's Objection ¶¶ 13–14.

This, however, does not qualify as "an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747–48 (E.D. Mich. 2004) (Cleland, J.). As Judge Cleland explains, "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Id*. at 747. Consequently, "A general objection to the magistrate's report has the same effect as a failure to object." *Id*. at 747–48.

This "objection" will be overruled.

## IV

More than two months after Petitioner filed his § 2255 motion (and more than two months after the time elapsed for filing such a motion) Petitioner filed a motion to add two claims. ECF No. 92. Both rely on the distinction between the two proscriptions against marijuana distribution contained in 21 U.S.C. § 841(b). One is a felony; the other, misdemeanor. *See Moncrieffe v. Holder*, --- U.S. ----, 2013 WL 1729220, at *4 (2013).

For reasons detailed above, these claims lack merit. To briefly recap, a "controlled substance offense" under § 4B1.2(b) can be an offense under either "federal or state law." Accordingly, reference to the provisions of § 841(b) is not necessarily required. *See, e.g.*, *United States v. Pruitt*, 545 F.3d 416, 423 (6th Cir. 2008) (interpreting North Carolina law for purposes of § 4B1.2 enhancement).

In this case, Petitioner's two prior felony drug convictions were Michigan state convictions. The relevant inquiry for the sentencing guideline career offender enhancement was not whether these offenses were punishable by a year or more of imprisonment under 21 U.S.C. § 841(b). Rather, the question was whether the offenses were punishable by a year or more of imprisonment under Michigan law. Petitioner's proposed additional claims, even if they relate back, are futile.

Leave to amend will be denied.

## V

Before Petitioner may appeal this Court's decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22(b). A certificate of appealability may issue

"only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336–37. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.*

Here, Petitioner has not made a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. Petitioner will also not be granted leave to proceed in forma pauperis on appeal, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

## VI

Accordingly, it is **ORDERED** that Judge Binder's report and recommendation (ECF No. 87) is **ADOPTED**.

It is further **ORDERED** that Petitioner's motion to vacate the sentence (ECF No. 69) is **DENIED WITH PREJUDICE**.

It is further **ORDERED** that Petitioner's motion to add a claim (ECF No. 92) is **DENIED**.

It is further **ORDERED** that the government's objection (ECF No. 88) is **OVERRULED**.

It is further **ORDERED** that Petitioner's objection (ECF No. 89) is **OVERRULED**.

It is further **ORDERED** that the government's motion to dismiss (ECF No. 76) is **DENIED AS MOOT**.

It is further **ORDERED** that Petitioner's motion for an extension of time to file (ECF No. 68), motion for leave to file (ECF No. 80), motion to appoint counsel (ECF No. 86), and motion to hold case in abeyance (ECF No. 93) are **DENIED AS MOOT**.

It is further **ORDERED** that Petitioner's motion to expand the record (ECF No. 96) is **DENIED AS MOOT**.

It is further **ORDERED** that issuance of a certificate of appealability is **DENIED**.

It is further **ORDERED** that leave to proceed in forma pauperis on appeal is **DECLINED**.

                                                s/Thomas L. Ludington  
                                                THOMAS L. LUDINGTON  
                                                United States District Judge

Dated: May 8, 2013

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and upon Jeffrey Dumas #26376-039 at FCI Allenwood, P.O. Box 2000, White Deer, PA 17887 by first class U.S. mail on May 8, 2013.

                                    s/Tracy A. Jacobs
                                    TRACY A. JACOBS